**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TADEUSZ WITKOWSKI,**

        **Plaintiff,**     1:09-cv-779
                                    (GLS/DRH)
    **v.**

**ADEPT MANAGEMENT SYSTEMS, LLC,**

        **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Luboja, Thau Law Firm | RICHARD M. HUNTER, ESQ. |
| 10 East 40th Street, 30th Floor | |
| New York, NY 10016 | |
| | |
| **FOR THE DEFENDANTS:** | |
| McNamee, Lochner Law Firm | DAVID J. WUKITSCH, ESQ. |
| 677 Broadway | |
| Albany, NY 12207-2503 | |

**Gary L. Sharpe
District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Tadeusz Witkowski commenced this action against Adept

Management Systems, LLC, for breach of contract, breach of implied

contract, unjust enrichment, negligent misrepresentation, and promissory estoppel. (*See* Am. Compl., Dkt. No. 31.) Pending are Adept's motion and Witkowski's cross-motion for summary judgment. (Dkt. Nos. 38, 40.) For the reasons that follow, Adept's motion is granted in part and denied in part, and Witkowski's motion is denied.

## II. Background

### A. Factual History

On May 18, 2007, plaintiff Tadeusz Witkowski began his employment as a frontline sales representative with defendant Adept Management Services, LLC. (*See* Def. SMF ¶ 12, Dkt. No. 38:26.) As outlined in a confirmation letter sent to Witkowski from James Cotton, a principal of Adept, the terms of Witkowski's employment included a starting annual salary of $52,000, full eligibility to participate in Adept's employee benefits, "a sales commission of 10% of the gross amount of all analysis closed with a go-ahead," and reimbursement of all approved expenses upon the submission of legitimate receipts for airfare, hotel stays, personal automobile expenses, and business-related telephone expenses. (*See* Orris Aff., Ex. A, May 18, 2007 Letter, Dkt. No. 38:2.) According to Witkowski, the phrase "all analysis closed with go-ahead" encompassed all

2

written and unwritten contracts or agreements regarding services that Adept received payment for.  (*See* Pl. Resp. SMF ¶ 14, Dkt. No. 40:32.)  As a frontline sales representative, Witkowski was responsible for scheduling and attending meetings; communicating with prospective clients via telephone, email, and written correspondence; arranging meetings between Adept representatives and prospective clients; and conducting followup visits and communications with clients.  (*See id.* at ¶ 16.)  In making contact and arranging initial meetings with prospective clients, Witkowski relied on both his own leads, contact information, and sources of business, and leads and contact information provided by Adept personnel and management.  (*See id.* at ¶ 17; *see also* Orris Aff. ¶ 12, Dkt. No. 38:1.)

      Sometime between October and December 2007, upon receiving lead information from Adept personnel, Witkowski contacted Claymont Steel Holdings, Inc. to set up an initial meeting.  (*See* Def. SMF ¶ 31, Dkt. No. 38:26; Pl. Resp. SMF ¶ 31, Dkt. No. 40:32.)  Witkowski and Claymont representatives thereafter participated in a series of meetings, some of which were attended by Adept's President, Mark Orris.  (*See* Pl. Resp. SMF ¶ 32, Dkt. No. 40:32.)  As a result of these meetings, Adept entered into a services agreement, or "closed with a go-ahead," with Claymont.

3

In February 2008, Orris informed Witkowski by email that his compensation package was being altered and that he had three options to choose from. (*See id.* at ¶ 25; *see also* Witkowski Aff., Ex. D, Orris Feb. 21, 2008 Email, Dkt. No. 40:5.) The first option was to be paid 10% commission without any salary or reimbursement for business expenses. (*See* Pl. Resp. SMF ¶ 26, Dkt. No. 40:32.) The second option was to be paid 8% commission with reimbursement for business expenses, but without a salary. (*See id.* at ¶ 27.) The third option was to be paid 6% commission with reimbursement for business expenses and the $52,000 annual salary. (*See id.* at ¶ 28.) On March 5, Witkowski and Orris agreed that Witkowski would receive 10% commission for new business, an additional 1.5% commission for new business generated by him without leads provided by Adept, and 7.5% commission for renewal and repeat business with the same client.[1] (*See id.* at ¶¶ 29-30; *see also* Witkowski Aff., Ex. D, Orris-Witkowski Mar. 5, 2008 Emails, Dkt. No. 40:5.) Orris also agreed that Witkowski would be entitled to continue receiving commission

---

[1] Before the new compensation agreement took effect, Adept reimbursed Witkowski for his business expenses in the amount of $9,581.31 in accordance with the May 18, 2007 confirmation letter. (*See* Pl. Resp. SMF ¶ 22, Dkt. No. 40:32.) And as evidenced by an email from Orris to Witkowski dated March 5, 2008, Witkowski continued to receive his salary until the end of March 2008. (*See* Witkowski Aff., Ex. D, Orris Mar. 5, 2008 Email, Dkt. No. 40:5.)

4

payments if and when his employment with Adept ended.  (*See* Pl. Resp. SMF ¶ 62, Dkt. No. 40:32; *see also* Witkowski Aff., Ex. D, Orris Mar. 4, 2008 Email, Dkt. No. 40:5.)

From December 17, 2007, to September 1, 2008, Adept paid Witkowski approximately $139,000.00 as 10% of Adept's gross revenue from Claymont in accordance with the May 17, 2007 and March 5, 2008 compensation terms.  (*See* Pl. Resp. SMF ¶¶ 33-36, Dkt. No. 40:32.)  And pursuant to the new terms, from September 1, 2008, to April 25, 2009, Witkowski received $41,780.00, or 7.5% of Adept's gross revenue, for the renewal of the Claymont account.  (*See id.* at ¶¶ 33-37.)

On September 4, 2008, Ed Fletcher of Atlas Holdings telephoned Adept principal David Crouse, explaining that Atlas was in the market for a consulting firm.  (*See* Def. SMF ¶ 38, Dkt. No. 38:26.)  In response, Crouse set up a call between Orris and Fletcher.  (*See id.* at ¶¶ 38-39.)  Later in the day on September 4, Fletcher called Orris to discuss Atlas's interest in hiring a consultant to improve the management and business operations of Finch Paper, an Atlas holding located in Glen Falls, New York.  (*See id.* at ¶ 41.)  Fletcher also informed Orris that Atlas's Chairman, Andy Bursky, would be in contact.  (*See id.*)  Accordingly, the following day, September

5

5, Bursky called Orris to discuss Atlas's consultant needs and to arrange for a meeting with Orris and Crouse.[2] (*See id.* at ¶ 43.) Orris subsequently informed Witkowski of his conversation with Fletcher and directed him to help secure Atlas's business by, among other things, acting as a liaison with regards to scheduling matters and providing additional information to Atlas, including references for Adept. (*See id.* at ¶ 42; *see also* Am. Compl. ¶¶ 104-06, Dkt. No. 31.) The meeting was scheduled for September 16, and Orris asked Witkowski to attend the meeting. (*See* Def. SMF ¶ 47, Dkt. No. 38:26; *see also* Orris Aff. ¶ 29, Dkt. No. 38:1 (alleging that Witkowski was asked to attend the meeting "to create the impression for Atlas that Adept was actually larger than it is" and because Witkowski "could benefit from watching [Orris] conduct a sales presentation").)

On September 8, Jeffrey Nathan, an Atlas representative, contacted Witkowski via email to request that he schedule a conference call for September 11 at 10:30 a.m. (*See* Def. SMF ¶ 44, Dkt. No. 38:26.) Nathan also asked Witkowski to forward a copy of Adept's proposal presentation prior to the conference call. (*See id.*) Witkowski then contacted Orris, who

---

[2]The parties point out that Witkowski and Chris Tengvall, a member of Adept's telemarketing personnel, were actually at Orris's house on September 5, 2008, for a meeting. (*See* Pl. Resp. SMF ¶ 40, Dkt. No. 40:32.)

6

asked Witkowski to review the presentation and provide any opinions and suggestions.  (*See* Am. Compl. ¶ 108, Dkt. No. 31.)  After receiving Witkowski's input and revising the presentation, Orris provided a copy of the presentation to Witkowski, who forwarded it to Nathan on September 9.  (*See id.* at ¶¶ 108-09; Def. SMF ¶ 45, Dkt. No. 38:26.)  The conference call was held on September 11.  (*See* Orris Aff. ¶ 28, Dkt. No. 38:1.)  Shortly after the conference call, Atlas representatives emailed Witkowski with a list of questions they wanted Adept to respond to at the upcoming meeting.  (*See* Am. Compl. ¶ 110, Dkt. No. 31.)  Witkowski responded with an email explaining how the questions would be addressed at the meeting.  (*See* Def. SMF ¶ 46, Dkt. No. 38:26.)

On September 16, 2008, the meeting was held in Glens Falls with Crouse, Orris, Witkowski, Fletcher, Nathan, and other Atlas and Finch representatives in attendance.  (*See id.* at ¶ 48.)  At the meeting, which was the first face-to-face meeting between Adept and Atlas-Finch representatives, Orris made Adept's presentation.  (*See id.* at ¶¶ 49-50.)  Following the meeting, Fletcher submitted additional questions to Orris by email, to which Witkowski and Nathan were copied.  (*See id.* at ¶ 51.)  After soliciting and receiving input from, among others, Witkowski regarding both

7

Fletcher's questions and the Atlas-Finch proposal, Orris provided Fletcher with the final version of the proposal.  (*See id.* at ¶ 52; *see also* Am. Compl. ¶¶ 119-21, Dkt. No. 31.)

In late September 2008, over the course of two weeks, Adept conducted an analysis of Atlas-Finch at the Glens Falls location.  (*See* Def. SMF ¶ 53, Dkt. No. 38:26.)  Witkowski admittedly played no role in the analysis, since—consistent with his prior actions with other clients, including Claymont—his duties related to sales and not analysis.  (*See* Pl. Resp. SMF ¶ 53, Dkt. No. 40:32; *see also* Am. Compl. ¶ 125, Dkt. No. 31.)  Upon completion of the analysis, Atlas requested that Orris attend a meeting of its board on October 28, 2008, to present Adept's analysis and recommendations.  (*See* Def. SMF ¶ 54, Dkt. No. 38:26.)  On October 28, Orris and David Lang, an Adept representative, attended Atlas's board meeting and presented the analysis.  (*See id.* at ¶ 55.)  The next morning, Atlas gave Adebt a verbal "go-ahead," with the terms of the project to be worked out in the future.  (*See id.*)  On the same morning of October 29, Orris terminated Witkowski's employment with Adept.  (*See* Pl. Resp. SMF ¶ 56, Dkt. No. 40:32; *see also* Orris Aff. ¶ 36, Dkt. No. 38:1 (averring that Witkowski "terminated his services ... after he claimed an entitlement to a

8

commission for the Atlas sale").)

On November 2, 2008, Adept personnel arrived at the Finch site in Glens Falls to begin performing their services. (*See* Def. SMF ¶ 57, Dkt. No. 38:26.) Over the next eight days, Adept made a written proposal to Atlas-Finch to provide services; Atlas-Finch countered with an amendment for different payment terms; Adept accepted Atlas-Finch's proposed amendment; and Adept and Atlas-Finch entered into a formal, finalized written agreement pursuant to which Adept was to provide services to Atlas-Finch. (*See id.* at ¶¶ 58-60.) The agreement was backdated to October 29, 2008. (*See* Pl. Resp. SMF ¶ 60, Dkt. No. 40:32.) Atlas-Finch made its first payment to Adept on November 12, 2008. (*See id.* at ¶ 61.)

## B.  Procedural History

On July 7, 2009, Witkowski filed suit against Adept, asserting claims of breach of contract, breach of implied contract, unjust enrichment, negligent misrepresentation, and promissory estoppel. (*See* Am. Compl. ¶¶ 130-94, Dkt. No. 31.) Adept moved for summary judgment on September 29, 2010, (*see* Dkt. No. 38), in response to which Witkowski cross-moved for summary judgment, (*see* Dkt. No. 40).

## III.  Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

## IV.  Discussion[3]

### A.  Breach of Contract

"To prevail on a breach of contract claim under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (internal quotation marks and citations omitted). "The initial interpretation of a contract is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks and citation omitted). However, whether a breach of contract has occurred is a question of fact for the jury. *See U.S. for Use of N. Maltese & Sons, Inc. v.*

---

[3]Neither party disputes that New York law controls here since the causes of action alleged are based on services performed, events that arose, and conduct that occurred in New York. (*See* Am. Compl. ¶¶ 15-18, 23, 28-30, Dkt. No. 31; Am. Answer ¶¶ 5-7, 10, Dkt. No. 35; Def. SMF ¶ 11, Dkt. No. 38:26.) Accordingly, the court will apply New York State substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

10

*Juno Constr. Corp.*, 759 F.2d 253, 255 (2d Cir. 1985) ("It is hardly necessary to cite authority for the proposition that whether there has been a breach of contract is a question of fact."); *Daigle v. W.*, 225 F. Supp. 2d 236, 248 (N.D.N.Y. 2002) ("It is well-settled that whether a breach of a contract has occurred is a question of fact that cannot properly be resolved in the context of a motion for summary judgment.")*.*

Here, Adept does not dispute the existence of a contract and that, prior to Witkowski's termination, both parties performed in accordance with the contract.  However, Adept first asserts that it never agreed to pay Witkowski commissions after his termination.  (*See* Def. Mem. of Law at 13-14, Dkt. No. 38:25.)  Second, Adept argues that, even if a post-termination commission agreement was in place, Witkowski was terminated before any contract, agreement, or "go-ahead" was closed with Atlas-Finch.[4]  (*See id.* at 13-16; *see also* Def. Reply Mem. of Law at 4, Dkt.

---

[4]Adept tangentially argues that Witkowski, as an at-will employee, could have been terminated at any time for any non-impermissible reason. (*See* Def. Mem. of Law at 11-12, Dkt. No. 38:25 (citing, inter alia, *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 59 (N.Y. 2008)).)  In response, Witkowski does not dispute his at-will status; nor does he contend that he has a cause of action for wrongful termination. (*See* Pl. Resp. Mem. of Law at 10, Dkt. No. 40:33.) Instead, Witkowski contends—correctly—that an at-will employee may nonetheless maintain an action where the "employer's termination action was specifically designed to cut off commissions that were coming due to the employee." *Arbeeny v. Kennedy Exec. Search, Inc.*, 71 A.D.3d 177, 184 (1st Dep't 2010); *see also Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 112 (2d Cir. 1985) ("[An at-will employment agreement] cannot be read to enable the [employer] to terminate an employee for the purpose of avoiding the payment of commissions which are otherwise owed.").  Therefore, since Witkowski's breach of contract claim is

11

No. 42 ("The pivotal issue ... is when did a binding obligation arise between Adept and Atlas/Finch—only at that point does [Witkowski] become entitled to a commission.").)  Lastly, Adept implicitly contends that Witkowski's activities regarding the Atlas-Finch account were not sufficient to trigger his right to a commission.  (*See* Def. Reply Mem. of Law at 6, Dkt. No. 42; *but see* Def. Mem. of Law at 13 n.2, Dkt. No. 28:25 (noting that the requirement that the sale must arise from Witkowski's activities "does not come into play in the resolution of this motion").)

At this stage, the court rejects Adept's arguments, for a reasonable jury could find that the emails exchanged between Witkowski and Orris during February and March 2008 evidenced an amended employment agreement that stipulated, among other things, Witkowski's entitlement to post-termination commission payments.  (*See* Witkowski Aff., Ex. D, Orris Mar. 4, 2008 Email, Dkt. No. 40:5.)  Adept's own actions confirm Witkowski's entitlement to post-termination commissions, as Witkowski continued to receive commission payments from the Claymont account after his termination.  As to the central question, that is when did Adept and

---

premised on Adept's alleged violation of his right to post-termination commission payments, Adept's at-will distinction is of little moment.

Atlas-Finch "close with a go-ahead," the court is satisfied that a genuine dispute exists as to whether Adept and Atlas-Finch entered into an agreement or contract prior to Witkowski's termination.[5]  In addition, the timing and nature of Witkowski's termination casts significant doubt upon Orris and Adept's motives—doubt from which a reasonable jury could infer that Adept was attempting to evade its commission payment obligations to Witkowski.  And with regard to Adept's contention that the scope of Witkowski's involvement with Atlas-Finch did not satisfy the conditions necessary to prompt his entitlement to a commission, the court is confident that a jury could find that Witkowski performed the types of duties and responsibilities contemplated by his employment agreement.

## B. Remaining Causes of Action

Witkowski's response papers are silent as to his claims for breach of implied contract, unjust enrichment, negligent misrepresentation, and promissory estoppel.  (*See generally* Pl. Resp. Mem. of Law, Dkt. No.

---

[5]To the extent Adept argues that the term "closed with a go-ahead" was limited to written, fully integrated service contracts, that argument finds no clear support in the terms of Witkowski's employment agreement.  Moreover, the record generally belies such an argument. (*See, e.g.*, Witkowski Aff., Ex. G, Orris Dep. at 105-07, Dkt. No. 40:8 ("There were certainly no requirement of signatures.  We don't even require signatures.  We don't even normally have a contract.  Our agreement is that we work on a week to week basis and that [the client] can cease with our services at any time [it] want[s].").)

13

40:33.)  Thus, as Adept points out, Witkowski "has articulated no opposition to that portion of Adept's motion which seeks dismissal of the second (implied contract), third (quantum meruit), fourth (negligent misrepresentation) and fifth (promissory estoppel) causes of action alleged in the complaint."  (Def. Reply Mem. of Law at 1, Dkt. No. 42.)  Presumably, because the parties admit to the existence of an enforceable contract, Witkowski has abandoned these claims.  Accordingly, in light of Witkowski's failure to offer any support for, or even acknowledge, his remaining claims, the court deems them abandoned.  *See Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267-68 (E.D.N.Y. 2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks and citations omitted)).  Furthermore, upon review of Adept's arguments regarding these claims, (*see* Def. Mem. of Law at 16-18, Dkt. No. 38:25), the court finds them facially meritorious and therefore grants summary judgment in favor of Adept on Witkowski's breach of implied contract, unjust enrichment, negligent misrepresentation, and promissory estoppel claims.  *See Road Dawgs Motorcycle Club of U.S., Inc. v. Cuse*

14

*Road Dawgs, Inc.*, 679 F. Supp. 2d 259, 267-68 & n.3 (N.D.N.Y. 2009).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Adept's motion for summary judgment (Dkt. No. 38) is **DENIED** in part as to Witkowski's breach of contract claim; and it is further

**ORDERED** that Adept's motion for summary judgment (Dkt. No. 38) is **GRANTED** in part and Witkowski's claims for breach of implied contract, unjust enrichment, negligent misrepresentation, and promissory estoppel are **DISMISSED**; and it is further

**ORDERED** that Witkowski's cross-motion for summary judgment (Dkt. No. 40) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 6, 2011
Albany, New York

_Gary L. Sharpe_
U.S. District Judge